The Lorain Journal Company v. Commissioner.
Lorain Journal Co. v. Commissioner
Docket No. 20179.
United States Tax Court
1950 Tax Ct. Memo LEXIS 9; 9 T.C.M. (CCH) 1156; T.C.M. (RIA) 50314; December 19, 1950
*9 Parker Fulton, Esq., for the petitioner. Lawrence R. Bloomenthal, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Petitioner contests a deficiency of $556.87 in excess profits tax for 1942 and claims an overpayment. The only question is whether certain amounts entered on petitioner's books in earlier years are includible in its invested capital as paid-in surplus or contributions to capital. Other adjustments are not contested. Findings of Fact Petitioner, an Ohio corporation, filed its returns with the collector for the eighteenth district of Ohio. Petitioner's authorized capital stock of $100,000 consists of 1,000 shares. Petitioner's books include an account captioned "Emil Calman," indicating that $100,000 in capital stock was issued in his name in return for cash, machinery and equipment aggregating $95,200 transferred to the corporation by him in 1921 and 1922. The unpaid balance of $4,800 was credited to the capital stock account as of December 31, 1926. As disclosed by certificates issued for petitioner's stock, Calman owned 996 of the 1,000 shares until September 30, 1922, when 996 shares were transferred to *10 Gerald A. Doyle, who remained in control until October 31, 1926, when 996 shares were transferred to David Gibson. Gibson's certificates were canceled and certificates for 996 shares were issued to Isadore Horvitz on October 17, 1932. Petitioner's books include an account captioned "The Gerald A. Doyle Special Account," containing credit entries dated from July 7, 1922, through September 30, 1923, in the total amount of $80,235.68. An accompanying explanation in the books indicates that the amounts were transferred from Doyle to petitioner by checks varying from about $75 to about $5,000. The $80,235.68 was never repaid by petitioner to Doyle, but was closed out on the books as of December 31, 1926, with a debit to his account and a credit to "surplus." The transfer to "surplus" resulted from an audit conducted by a firm of certified public accountants in December 1926, and, according to petitioner's journal, was intended "to write off the paid-in capital account of Mr. Doyle as authorized by Mr. Gibson. This adjustment as of change of the management in August, 1923." Petitioner's books include an account in the name of "David Gibson." Between August 30, 1923, and December 31, 1927, total *11 credits of $332,495, consisting of several items for each month and divided between "check" and "cash" were entered in the account. As of December 31, 1927, the account was closed and the $332,495 was credited to "surplus." Beginning in 1928 a continuation ledger sheet appeared on petitioner's books in the name of "David Gibson." Annual totals of credits to this account were $93,100 for 1928; $155,600 in 1929; and $148,100 for 1930. The $148,100 was reduced by total debits of $400, resulting in a net credit balance of $147,700 for 1930. According to its books, petitioner has not made repayment of any amounts represented by the credits entered in the "David Gibson" account from 1923 through 1930. The $93,100 of credits for 1928 were closed out at the end of that year and credited to "surplus." The $155,600 of credits for 1929 were first credited in a lump sum to the "profit and loss" account, and were then further transferred by a debit to "profit and loss" and a credit to "surplus." Of the $147,700 net credits for 1930, $138,000 was offset by a credit to "profit and loss" and in turn was transferred from that account and credited to "surplus." Net credits in the "David Gibson" account *12 of $9,700 were carried forward at the end of 1930. Further credits to the "David Gibson" account were made in 1931 and 1932 in the total amounts of $135,900 and $132,856, respectively. Of the 1932 credits $16,556 was for "interest." At the end of 1933 the credit balance of $278,456 was carried in an account captioned "Notes Payable, David Gibson." The caption was marked out and replaced by the following: "Assigned to Highway Construction Company, Cleveland, Ohio." In its returns for the years 1922 through 1927 petitioner did not report as income the credits of $80,235.68 in the "Gerald A. Doyle" account or the credits of $332,495 in the "David Gibson" account entered during the same years. Instead, the amounts were shown in the balance sheets accompanying each return either as "working capital" or as "paid-in surplus." An opening balance sheet included in the 1927 return contained an account named "working capital" in the amount of $239,595. The closing balance sheet in the same return indicates that the account was closed into "surplus" during the year. As of November 15, 1928, Gibson, on behalf of petitioner, executed a "Waiver Right to File a Petition with the U.S. Board of *13 Tax Appeals" consenting to assessment and collection of a deficiency of $82,059 for 1927. The Revenue Agent's report explaining the deficiencies, a copy of which had been sent to petitioner, stated: "Cause of Additional tax: The additional tax is caused by the transfer of "Working Capital" (Paid in Surplus) to taxable income. "Person with whom discussed: The changes were discussed with David Gibson, President. He concurred and signed agreement form 870." A subsequent letter from the Bureau of Internal Revenue to petitioner dated February 5, 1930, advised that "an examination of your income tax returns filed for the years 1923 to 1927, inclusive, discloses no deficiencies or overassessment for the years mentioned." In its returns for the years 1928, 1929, and 1930 petitioner reported as income the credits in the "David Gibson" account for those years of $93,100, $155,600, and $138,000, respectively. As of January 28, 1931, the Bureau of Internal Revenue notified petitioner that its return for 1929 had been examined, and enclosed a copy of the revenue agent's report stating: "Included in gross sales is amount of $155,600 received from Highway Construction Company, Cleveland, *14 Ohio, which is deemed to be non-taxable to the taxpayer since the amount constitutes an unallowable deduction to the Highway Construction Company. * * *
"Elimination of receipts from Highway Construction Company as income increases loss reported to $155,779.04. "It is recommended the return be accepted no tax due or overpaid." Notices sent by the Bureau of Internal Revenue to petitioner that its returns for 1928 and 1930 were examined included similarly worded reports of the revenue agent with respect to the $93,100 and the $138,000. Highway Construction Company, hereinafter called Highway, is an Ohio corporation which engaged in road construction during the period 1922 through 1930. Since 1915 Samuel A. Horvitz has been an officer and principal stockholder of Highway. In 1932 Horvitz, his brother Isadore, and his wife acquired all petitioner's stock; and since 1932 Horvitz has been vice president, secretary, and publisher of petitioner. Highway has an account on its books called "The Lorain Journal Co. interest a/c 6%." Lines were drawn through the account's former designation: "D. Gibson." The first entry in the account was dated December 31, 1938, and the last entry *15 December 31, 1942. As president of Highway, Horvitz signed an "amended petition" in the case of Highway Construction Co. v. Commissioner of Internal Revenue, Docket No. 20178, contesting the disallowance by the Commissioner as an ordinary and necessary expense of certain payments purportedly made by Highway to Gibson and Doyle from 1924 through 1930, amounting to about $605,000. Highway took the position that if not allowable as an expense the amount should be treated as "good will." In its returns for the years 1922 through 1930 petitioner reported payment of total officers' salaries of amounts ranging from $2,600 in 1923 to $10,660 in 1929. The returns disclosed payments to Gibson as president of $4,160 each in 1928, 1929, and 1930, but no salary payments to Doyle although he had been designated president and treasurer in 1922, devoting one day a week to the business. In its original returns for 1940, 1941, and 1942 petitioner computed its excess profits credit under the average base period net income method. In 1943 petitioner filed amended returns for each of the same years, computing its excess profits credit on the basis of invested capital. Its computation of of invested *16 capital includes $799,430.68, being the sum of the $80,235.68 credited to "The Gerald A. Doyle Special Account" in 1922 and 1923; the $332,495 credited to the "David Gibson" account between 1923 through 1927; and the total annual credits to the "David Gibson" continuation account for 1928, 1929, and 1930 of $93,100, $155,600, and $138,000 (transferred to "surplus"), respectively. In his notice of deficiency respondent - "* * * Held that the amount of $799,430.68 claimed as paid-in surplus or a contribution to capital is not allowable in the computation of statutory invested capital." The said amount of $799,430.68 was contributed to petitioner's capital by its stockholders as paid-in surplus. Opinion Assuming, as respondent urges, that the prior statement by petitioner's president is sufficient to discredit all of his testimony, the statement is not effective as an independent source of proof since it was received for the limited - and we are assuming successful - purpose of impeaching the witness. What is left is respondent's determination on the one hand and the contemporaneous records in petitioner's books of account on the other. The latter are adequate to sustain petitioner's *17 burden and to place the burden of going forward upon respondent. In the absence of contradictory evidence, and there was none, we have found the facts as they appear upon the books. [Dec. 10,658]. This determination of the facts disposes of the proceeding. The contributions to capital by petitioner's then stockholders are available to it as equity invested capital, see ; , affirmed (C.A., 5th Cir.), ; , affirmed (C.C.A., 2nd Cir.), ; , and to that extent the deficiency determination must accordingly be viewed as erroneous. Cf. Crean Bros., Inc., 15 T.C. - (December 18, 1950). Decision will be entered under Rule 50.